561 So.2d 1326 (1990)
FIRST STATE SAVINGS BANK, Etc., Appellant/Cross-Appellee,
v.
ALBRIGHT & ASSOCIATES OF OCALA, INC., Etc., et al., Appellees/Cross-Appellants.
Nos. 88-2445 and 89-341.
District Court of Appeal of Florida, Fifth District.
May 31, 1990.
*1327 Leslie King O'Neal of Markel, McDonough & O'Neal, Orlando, for appellant/cross-appellee.
W.C. O'Neal of O'Neal & O'Neal, Gainesville, for appellees/cross-appellants.
DANIEL, Chief Judge.
First State Savings Bank appeals a final judgment in favor of Stephen Albright, a real estate appraiser, and his firm, Albright & Associates of Ocala, Inc. (Albright). The bank contends that the trial court erred in denying its motion to amend the pleadings to conform to the evidence presented at trial and in directing a verdict in favor of Albright. Albright cross-appeals an order finding that he is not a "professional" for purposes of the two-year statute of limitations for professional malpractice. We conclude that the trial court should not have directed a verdict in favor of Albright and accordingly reverse the final judgment. We agree, however, with the trial court that Albright is not a professional for purposes of the malpractice statute of limitations.
In 1986, the bank filed suit against Albright and his firm for damages resulting from an allegedly inaccurate appraisal of property. In its complaint, the bank alleged that Albright undertook, for consideration, to provide an accurate appraisal of a development known as the "Golden Ocala" project,[1] that the appraisal and an update were delivered to the bank in 1984, that Albright knew that the bank would rely on the appraisal in determining whether a loan secured by the property should be made, that the bank loaned $37,000,000 for the Golden Ocala project in reliance on the appraisal showing a value of $57,000,000, that the project had in fact a market value of less than $9,500,000, and that the mortgage on the property is now in default. The bank further alleged that Albright had negligently, unskillfully, and without due care prepared the appraisal and that as a direct and proximate result of the detrimental reliance on the negligent acts of Albright, the bank had been damaged.
In his answer, Albright admitted making the appraisal for his client Golden Ocala but denied that it had been made for the bank. Albright also moved for summary *1328 judgment alleging in part that the action was barred by the two-year statute of limitations for professional malpractice. The trial court found that Albright is not a professional within the meaning of the statute of limitations for professional malpractice and denied his motion and renewed motion for summary judgment.
The evidence at trial established that the bank would generally loan about seventy-five percent of the appraisal value to develop raw land. The initial appraisal done by Albright valued the Golden Ocala project at $31,000,000 and the update valued the project at $57,000,000. The update was specifically addressed to the president of the bank. The appraisal, along with the other information concerning the developers, was presented to the board of the bank which approved a loan of $37,000,000 to develop Golden Ocala. The Federal Home Loan Bank Board rejected the appraisal and eventually required the bank to write down the book value of the loan to $13,400,000. The mortgage and the property has been foreclosed and the bank has apparently received no money from Golden Ocala or its developers. Two expert witnesses testified that Albright's appraisal grossly misrepresented the value of the property and did not comply with federal banking regulations.
After the bank rested its case, Albright moved for entry of a directed verdict on the basis that there can be no recovery in tort for purely economic damages, as were sought here. Counsel for the bank argued that he could not sue Albright in contract because of a lack of privity and therefore was required to sue under a negligence theory. The hearing on the motion was continued until the following day. At this time, counsel for the bank argued that its action, although couched in terms of negligence, was also an action for failure to use due care on the contract and arose out of the duties under the contract. Counsel then moved to have the pleadings conform to the evidence. The trial court denied this motion and directed a verdict in favor of Albright.
In First Florida Bank v. Max Mitchell & Company, 558 So.2d 9 (Fla. 1990), the Florida Supreme Court recently held that an accountant may be held liable for negligence to parties, despite a lack of privity, where the accountant knows that those parties will rely upon his opinion. In that case, Mitchell, a certified public accountant, went to First Florida Bank for the purpose of negotiating a loan on behalf of his client, C.M. Systems, Inc. Mitchell told the bank vice president that he was a certified public accountant and gave the vice president audited financial statements of C.M. Systems which had been prepared by Mitchell's accounting firm. The financial statements did not show that C.M. Systems owed money to any bank and Mitchell later told the bank vice president that C.M. Systems was not indebted to any bank. The bank later approved a credit line of $500,000 to C.M. Systems. C.M. Systems borrowed the entire amount of the $500,000 credit line which it never repaid.
The bank later discovered that the audit of C.M. Systems had substantially overstated its assets, understated its liabilities, and overstated its net income. Among other things, the financial statement failed to reflect that C.M. Systems owed at least $750,000 to several banks.
The bank filed a three count complaint against Mitchell and his firm. Because of the absence of privity between either Mitchell or his firm and the bank, the trial court granted Mitchell's request for summary judgment on the negligence counts. The district court affirmed but certified a question to the supreme court concerning the scope of an accountant's liability.
The supreme court noted that there were essentially four lines of authority with regard to the question of an accountant's liability: 1) except in cases of fraud, an accountant is only liable to one with whom he is in privity or near privity; 2) an accountant is liable to third parties in the absence of privity under the circumstances described in section 552 of the Restatement (Second) of Torts (1976); 3) an accountant *1329 is liable to all persons who might reasonably be foreseen as relying upon his work product; and 4) an accountant's liability to third persons shall be determined by balancing various factors, including the foreseeability of harm, the closeness of the connection between the defendant's conduct and the injuries suffered, and the policy of preventing future harm.
Because of the heavy reliance upon audited financial statements in the financial world, the court believed that permitting recovery only from those in privity or near privity was unduly restrictive. On the other hand, the court believed that liability should be limited to those persons or classes of persons whom an accountant "knows" will rely on his opinion rather than those he "should have known" because of the fact that an accountant controls neither his client's accounting records nor the distribution of his reports. In light of these considerations, the court adopted the rationale of section 552 of the Restatement (Second) of Torts (1976), as setting forth the circumstances under which an accountant may be held liable in negligence to persons who are not in contractual privity. Section 552 provides as follows:
§ 552. Information Negligently Supplied for the Guidance of Others
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
Applying section 552 to the facts, the court noted that Mitchell had negotiated the loan and personally delivered the financial statements to the bank with the knowledge that the bank would rely upon them in considering whether to approve the loan. In these circumstances, the court held that Mitchell had vouched for the integrity of the audits and that his conduct in dealing with the bank sufficed to meet the requirements of the rule which it had adopted.
In the present case, the trial court directed a verdict in favor of Albright on the ground that the bank did not have a cause of action for negligence. We find no appreciable difference between the accountant in First Florida Bank and the appraiser in this case. Accordingly, we adopt section 552 as setting forth the circumstances under which an appraiser may be held liable for his negligence to third parties in the absence of privity. See Security First Federal Savings and Loan Association v. Broom, 560 So.2d 304 (Fla. 1st DCA 1990).
Here the appraisal prepared by Albright specifically stated that its objective was to estimate the fair market value of the Golden Ocala project for mortgage financing. An update of the appraisal prepared by Albright was addressed directly to the president of the bank. The appraisal was part of the information supplied to the bank for its consideration of Golden Ocala's loan request and there was evidence that the bank did rely on this information to its detriment. There was also evidence that Albright had grossly misrepresented the value of the project, that the appraisal failed to comply with federal guidelines, and that the appraisal was negligently prepared. A directed verdict is proper only when the record conclusively shows an absence of facts or inferences from facts to *1330 support a jury verdict. Holmes v. Don Mealey Chevrolet, Inc., 468 So.2d 552 (Fla. 5th DCA 1985); Ferber v. Orange Blossom Center, Inc., 388 So.2d 1074 (Fla. 5th DCA 1980). Because there was evidence which would have supported a verdict for the bank, the trial court erred in directing a verdict in favor of Albright.
On cross-appeal, Albright argues that, as a member of the American Institute of Real Estate Appraisers (MAI), he should be deemed a professional for purposes of the two-year statute of limitations for professional malpractice. Section 95.11(4)(a), Florida Statutes (1987), provides that an action for professional malpractice, other than medical malpractice, must be commenced within two years from the discovery of the malpractice. For purposes of this statute of limitation, a "profession" is a calling requiring, as a minimum for licensing under the laws of Florida, specialized knowledge and academic preparation amounting to at least a four-year university level degree in the field of study specifically related to that calling. "In other words, if, under the laws and administrative rules of this state, a person can only be licensed to practice an occupation upon completion of a four-year college degree in that field, then that occupation is a profession." Pierce v. AAll Insurance, Inc., 531 So.2d 84, 87 (Fla. 1988).
According to Albright, a MAI designation requires membership in the National Association of Realtors, an undergraduate college degree or its equivalent from an approved school, five years experience as an appraiser, and attendance at required courses and successful examinations. However, according to an affidavit submitted by the bank from the Director of the Division of Real Estate, Florida does not require a four-year baccalaureate degree in the field of real estate appraising as a requirement for real estate appraisers. Albright himself admits that there is no Florida statute which defines qualifications or sets forth requirements for a person to be a real estate appraiser or a MAI real estate appraiser. We agree with the first district that although the requirements for MAI designation are rigorous, they fail to meet the requirement under Pierce that a four-year degree be in a field related to their profession. See Security First Federal Savings and Loan Association v. Broom, 560 So.2d at 307-308. Accordingly, Albright was not a professional for purposes of the professional malpractice statute of limitations.
REVERSED and REMANDED for a new trial.
COBB and COWART, JJ., concur.
NOTES
[1] The Golden Ocala project was designed to be an exclusive community of single and multifamily dwellings surrounding two golf courses in Ocala, Florida.