653 So.2d 412 (1995)
PALAU INTERNATIONAL TRADERS, INC., a Florida corporation, Appellant,
v.
NARCAM AIRCRAFT, INC., a Florida corporation, and International Airlines Holdings Corporation, a foreign corporation, Appellees.
No. 92-2529.
District Court of Appeal of Florida, Third District.
March 15, 1995.
Rehearing Denied May 10, 1995.
McDonald & McDonald, and David M. McDonald, Miami, for appellant.
*413 Arthur C. Moller, and John D. Hoffman, Miami, for appellee, Narcam Aircraft, Inc.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, JORGENSON, COPE, LEVY, GERSTEN and GODERICH, JJ.
EN BANC
GERSTEN, Judge.
Appellant, Palau International Traders, Inc. ("the buyer"), appeals a summary judgment entered in favor of appellee, Narcam Aircraft, Inc. ("Narcam"). We affirm.

I.
The issue is whether, under a negligence theory, a purchaser of a used airplane can recover for purely economic losses from an airplane mechanic with whom it has no privity.
The buyer, a Florida corporation, contracted with International Airlines Holding Corporation ("the seller") to purchase a used airplane. The buyer intended to use the airplane to transport freshly caught fish from the island of Palau to Japan where the fish would be sold to the Japanese sashimi market.
Prior to the sale, the airplane was under Peruvian registry. Under the terms of the contract, the seller was to: 1) provide the airplane with a United States registration; 2) deliver the airplane to the buyer with a valid United States certificate of airworthiness; and 3) have the airplane placed in conformity with a continuous maintenance program.
The contract provided in pertinent part:
At the time of delivery of the aircraft and closing of this transaction, the aircraft shall be under U.S. Registry and shall have a current United States' FAA Certificate of Airworthiness... .
There was no legal requirement to obtain the airworthiness certificate to buy the plane, but one was needed to fly the plane. The contract also contained a bold type "AS IS, WHERE IS" disclaimer which disclaimed any and all warranties except those regarding liens and encumbrances. The disclaimer provided:
DISCLAIMER: THE USED AIRCRAFT AND OTHER ITEMS DELIVERED HEREUNDER ARE SOLD TO BUYER "AS IS, WHERE IS" AND THE WARRANTY OF TITLE SET FORTH IN (i) ABOVE IS EXCLUSIVE AND IN SUBSTITUTION FOR, AND BUYER HEREBY WAIVES, RELEASES AND RENOUNCES ALL OTHER WARRANTIES, OBLIGATIONS AND LIABILITIES OF SELLER AND RIGHTS, CLAIMS AND REMEDIES OF BUYER AGAINST SELLER, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE, WITH RESPECT TO ANY NONCONFORMANCE OR DEFECT IN ANY AIRCRAFT OR OTHER THING DELIVERED UNDER THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO (A) ANY CONDITION OF ANY ITEM DELIVERED PURSUANT TO THIS AGREEMENT (SIC); (B) ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS: (C) ANY IMPLIED WARRANTY ARISING FROM THE COURSE OR (SIC) PERFORMANCE, COURSE OF DEALING OR USAGE OR (SIC) TRADE: (D) ANY OBLIGATION LIABILITY, RIGHT, CLAIM OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM THE STRICT LIABILITY OR THE ACTUAL OR IMPUTED NEGLIGENCE OF SELLER; AND (E) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM OR REMEDY FOR LOSS OF USE, REVENUE OR PROFIT, OR FOR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES.
At the time buyer and seller entered their contract, Aeronaves del Peru was leasing this airplane from the seller. Aeronaves del Peru, in turn, contracted with Narcam to perform the necessary repairs, maintenance, and inspections on the airplane to obtain a United States certificate of airworthiness.
Narcam is a Federal Aviation Administration ("FAA") certificated domestic repair station located in Miami. 14 C.F.R. § 145.1-145.63. The FAA requires that a certificated *414 domestic repair station perform the requisite inspections on used airplanes before applying for a standard airworthiness certificate. 14 C.F.R. § 21.183(d)(2). For issuance of the certificate, the airplane must be inspected to ensure that it conforms with its type design, is in accordance with the performance rules for 100-hour inspections and is found airworthy by the holder of a repair station certificate. 14 C.F.R. § 21.183(d)(2)(ii).
Although Aeronaves del Peru hired Narcam to repair and inspect the airplane, Narcam was aware of the contract between the buyer and seller. Narcam also knew that the purpose of its maintenance and inspection work was to obtain an airworthiness certificate. Yet, Narcam did not control the issuance of the airworthiness certificate. The FAA had the final authority to certify the airplane as airworthy. 14 C.F.R. § 21.183(d)(3).
After concluding its work, Narcam entered a maintenance release in the airplane's logbook and completed the application for an airworthiness certificate. Narcam verified that the airplane had been inspected and found airworthy. Although the sale had not yet been consummated, the buyer signed the section of the application entitled "owner certification."
Two days later, the buyer executed a chattel mortgage and promissory note to the seller for the airplane. The following day, the buyer took delivery of the airplane even though the standard airworthiness certificate had not been issued by the FAA.
A week after the buyer took delivery of the airplane, an FAA-designated airworthiness representative reviewed the airplane's maintenance records and logbooks, inspected the plane, and certified the application for an airworthiness certificate. Thereafter, the FAA-designated airworthiness representative issued a standard airworthiness certificate for the airplane.
Six months later, when the airplane was located in Palau, the buyer discovered that the landing gear was cracked due to extensive corrosion. The buyer alleged this condition existed when Narcam conducted its inspection of the airplane six months earlier. It is undisputed that there were no accompanying personal injuries or property damage to property outside the contract.
The buyer filed a complaint against the seller and Narcam for economic losses including the cost of repairs to the airplane, loss of use of the airplane, and consequential damages. In the complaint, the buyer alleged that the seller breached its contract; that Narcam was negligent in its repairs on the airplane; and, that Narcam negligently misrepresented the condition of the airplane. The buyer further alleged that Narcam had negligently overlooked existing conditions involving corrosion while inspecting the airplane in Miami. Consequently, the buyer sought damages from Narcam for the additional expense of having the repairs performed on a Pacific island.
The seller cross-claimed against Narcam for indemnification. The buyer then settled its claim against the seller and the claims and cross-claims between the buyer and seller were dismissed. The buyer's claims against Narcam were unaffected by the settlement.
Narcam then moved for summary judgment alleging that the complaint failed to state a cause of action based upon the economic loss rule. The trial court granted Narcam's motion for summary judgment as a matter of law.

II.
The buyer contends two exceptions to the economic loss rule apply precluding the granting of summary judgment for Narcam. First, relying upon A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973), the buyer argues it is a third party who could foreseeably sustain an economic loss proximately caused by the negligent performance of Narcam as a certificated airplane mechanic and repair station. Thus, the buyer submits it has a cause of action against Narcam under a tort theory despite the absence of privity. Second, relying upon First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9 (Fla. 1990), the buyer maintains that it reasonably relied upon information which was negligently supplied by Narcam and which guided the buyer in its decision to purchase the airplane.
*415 Narcam asserts that the trial court properly entered summary judgment as a matter of law because Florida's economic loss rule bars the buyer's tort claims and no exceptions to the economic loss rule apply.
In order to evaluate the merits of these respective positions, it is necessary to discuss the evolving Florida law on the economic loss rule and the exceptions to the rule.

III.
In A.R. Moyer, Inc. v. Graham, 285 So.2d at 397, a non-privity of contract case, the court approved recovery for economic losses without personal injury or property damage based on a negligent tort. The court stated that "a third party general contractor, who may foreseeably be injured or sustained an economic loss proximately caused by the negligent performance of a contractual duty of an architect, has a cause of action against the alleged negligent architect, notwithstanding absence of privity." Id. at 402. The court explained:
Altogether too much control over the contractor necessarily rests in the hands of the supervising architect for him not to be placed under a duty imposed by law to perform without negligence his functions as they affect the contractor. The power of the architect to stop the work alone is tantamount to a power of economic life or death over the contractor. It is only just that such authority, exercised in such a relationship, carry commensurate legal responsibility.

Id. at 401 (emphasis added) (quoting United States ex rel. Los Angeles Testing Lab. v. Rogers & Rogers, 161 F. Supp. 132, 136 (S.D.Cal. 1958).
In First American Title Ins. Co. v. First Title Service Co., 457 So.2d 467 (Fla. 1984), the court addressed a claim by a party not in privity with an abstract company for negligent preparation of an abstract. The court found that the plaintiff was a third party beneficiary of the abstracter's employment contract. In First American, unlike Moyer, the court limited liability to parties to the abstract transaction and intended and known third party beneficiaries, rather than to all foreseeable injured parties. Id. at 472-73. See also Southland Constr., Inc. v. Richeson Corp., 642 So.2d 5 (Fla. 5th DCA 1994) (engineer, who knew that contractor would be damaged if engineer negligently performed, is liable in tort even though there is no contract between the parties).
In East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), the United States Supreme Court addressed the various approaches for recovery in cases involving purely economic damages. The East River court adopted the view espoused in Seely v. White Motor Co., 403 P.2d 145 (Cal. 1965), and held "that a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." East River, 476 U.S. at 871, 106 S.Ct. at 2302.
Following the East River decision, in Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899, 902 (Fla. 1987), the Florida Supreme Court held that contract principles, not tort principles, must govern claims for economic loss without an accompanying physical injury or property damage. However, the parties in Florida Power & Light Co. had a contract with each other and therefore could pursue the action under contract principles. Id. at 900.
While Florida Power & Light Co. dealt with a purchaser of goods, in AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180 (Fla. 1987), the court held that a purchaser of services could not recover economic losses in tort without a claim for personal injury or other property damage. The AFM court reconciled Moyer with its other decisions and explained that Moyer was based on the fact that the supervisory responsibilities vested in the architect carried with it a concurrent duty not to injure foreseeable parties who were not beneficiaries of the contract. Id. at 181.
In the Florida Supreme Court's most recent decision addressing the economic loss rule, the court strictly limited the holding in Moyer to its unique facts. Casa Clara Condominium Ass'n v. Charley Toppino & Sons, Inc., 620 So.2d 1244, 1248 n. 9 (Fla. 1993). *416 See also Spancrete, Inc. v. Ronald E. Frazier & Assocs., P.A., 630 So.2d 1197 (Fla.3d DCA 1994) (duty of care owed by supervisory contractor to general contractor in Moyer does not extend to subcontractor). In Casa Clara, the court stated that the economic loss rule limits plaintiffs seeking to recover purely economic losses, defined as "`damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits  without any claim of personal injury or damage to other property,'" Casa Clara, 620 So.2d at 1246 (quoting Note, Economic Loss in Products Liability Jurisprudence, 66 Colum.L.Rev. 917, 918 (1966)), to contractual remedies only.
The Casa Clara court held that homeowners are subject to the economic loss rule which bars tort recovery when a product damages itself and causes economic loss, without personal injury or damage to property other than the product itself. The court explained that "[i]f a house causes economic disappointment by not meeting a purchaser's expectations, the resulting failure to receive the benefit of the bargain is a core concern of contract, not tort, law." Casa Clara, 620 So.2d at 1247.
The court further elaborated, stating:
[E]conomic losses are "disappointed economic expectations," which are protected by contract law, rather than tort law. Sensenbrenner v. Rust, Orling & Neale Architects, Inc., [236 Va. 419], 374 S.E.2d 55, 58 (1988); Stuart v. Coldwell Banker Commercial Group, Inc., [109 Wash.2d 406], 745 P.2d 1284 (1987).
Casa Clara, 620 So.2d at 1246. See also City of Tampa v. Thornton-Tomasetti, P.C., 646 So.2d 279 (Fla. 2d DCA 1994) (engineering consulting firms not liable to noncontractual party for economic losses arising from professional negligence); Ginsberg v. Lennar Florida Holdings, Inc., 645 So.2d 490 (Fla. 3d DCA 1994) (breach of contractual terms not recoverable in tort).
Applying these principles to the facts of this case, we conclude that the holding in Casa Clara is fatal to the buyer's position. Just like the homeowners in Casa Clara, the only losses suffered by the buyer here were economic losses. Like the homes in Casa Clara which did not meet the homeowners' expectations, the airplane in this case did not meet the buyer's expectations. The only harm to the buyer was for purely economic losses. The buyer sought recovery of damages for inadequate value, costs of repairing the airplane on a Pacific island rather than in Miami, and loss of use of the airplane. As Casa Clara instructs, however, the buyer's failure to receive the benefit of his bargain is a core concern of contract, not tort law.
Like the homeowners in Casa Clara, there were several ways the buyer in this case could have taken steps independently to protect itself. For example, the buyer could have hired its own mechanic to perform maintenance and inspections on the airplane rather than rely on the seller's airplane mechanic. See First Am. Title Ins. Co., 457 So.2d at 471. Under those circumstances, the buyer would have a contractual remedy directly from its own mechanic. Alternatively, the buyer, particularly in a large commercial transaction as in this case, could have protected his interests by negotiation and contractual bargaining or insurance with the seller. Florida Power & Light Co., 510 So.2d at 902; American Universal Ins. Group v. General Motors Corp., 578 So.2d 451, 455 (Fla. 1st DCA 1991). The buyer also has the choice to forego warranty protection in order to obtain a lower price. Florida Power & Light Co., 510 So.2d at 902; American Universal Ins. Group, 578 So.2d at 455. These alternatives illustrate that although the buyer's expectations of the airplane were not met, any damages could have been remedied if the buyer had purchased insurance, paid for a warranty, or directly contracted with the airplane mechanic.
To expand negligence law under the facts of this case would result in providing the buyer with a remedy against Narcam without consideration, that is of longer duration and greater financial impact than the remedy the buyer contracted for with the seller in the first place. Such a result would be contrary to the well established policy of limiting recovery in contract actions to damages which were within the contemplation of the parties. Hadley v. Baxendale, 156 Eng.Rep. 145 (1854).
*417 In light of the economic loss rule, how could Narcam, who was hired by Aeronaves del Peru, possibly anticipate that it would be liable for damages for the cost of repairing an airplane in the South Pacific and for lost profits from the sale of sushi? It could not.

IV.
The buyer's alternative theory of liability is premised upon First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d at 9, and section 552, Restatement (Second) of Torts (1976). The issue we must decide is which competing legal principle takes precedence when the economic loss rule and section 552 clash. We conclude that the economic loss rule must prevail, and decline to expand liability by extending section 552 to this case.
It is clear from our discussion of the buyer's first contention that the economic loss rule is firmly rooted in our jurisprudence and has been adopted in a majority of jurisdictions throughout the country. East River, 476 U.S. at 858; Casa Clara, 620 So.2d at 1246 n. 2; Florida Power & Light Co., 510 So.2d at 899; AFM Corp., 515 So.2d at 180.
In Max Mitchell, an accountant negotiated a loan with a bank for his client. Then, the accountant personally delivered audited financial statements to the bank. These statements substantially overstated the client's assets and understated its liabilities. Max Mitchell, 558 So.2d at 11. The accountant also falsely stated that his client was not indebted to any other bank. The financial statements were used to induce the reliance of the bank to approve a line of credit for the accountant's client, which was borrowed by the client and then never repaid. Id.
The bank filed a negligence action against the accountant and his firm. The supreme court held the accountant was liable to a third party in negligence based upon the rationale of section 552. Max Mitchell, 558 So.2d at 14. Section 552 provides:
§ 552. Information Negligently Supplied for the Guidance of Others
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
Essentially, section 552 is a narrow exception to the economic loss rule. Since the Max Mitchell case was decided in 1990, Florida courts have adopted the rationale of section 552 in very limited circumstances. See Bay Garden Manor Condominium Ass'n v. James D. Marks Assocs., Inc., 576 So.2d 744 (Fla.3d DCA 1991) (engineers hired to inspect buildings and prepare inspection reports that would guide others in making business decisions could be sued in negligence under section 552); First State Sav. Bank v. Albright & Assocs., Inc., 561 So.2d 1326 (Fla. 5th DCA) (appraiser may be held liable to third party for negligence under section 552), review denied, 576 So.2d 284 (Fla. 1990).
However, after these limited decisions, the Florida Supreme Court reaffirmed and rearticulated the economic loss rule in Casa Clara. In fact, not only did the court reaffirm the economic loss rule, it disapproved of several district court cases which refused to apply the economic loss rule to contract actions. Casa Clara, 620 So.2d at 1248. See Latite Roofing Co. v. Urbanek, 528 So.2d 1381 (Fla. 4th DCA 1988); Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc., 406 So.2d 515 (Fla. 4th DCA 1981), review denied, 417 So.2d 328 (Fla. 1982); Adobe Bldg. Ctrs., Inc. v. Reynolds, 403 So.2d 1033 *418 (Fla. 4th DCA), review dismissed, 411 So.2d 380 (Fla. 1981).
Unlike the few Florida cases which adopted the rationale of section 552, this case involves the sale and servicing of goods, a transaction that is specifically governed by the Uniform Commercial Code. The economic loss rule developed out of the sale of goods. Dean Prosser summarized this established law as follows:
There can be no doubt that the seller's liability for negligence covers any kind of physical harm, including not only personal injuries, but also property damage to the defective chattel itself, as where an automobile is wrecked by reason of its own bad brakes, as well as damage to any other property in the vicinity. But where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule, ... that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery.
William Prosser, Law of Torts § 101, at 665 (4th ed. 1971) (footnotes omitted).
Turning to the facts of this case, Narcam was in the business of servicing airplanes. It was not in the business of supplying information for the guidance of others as contemplated by section 552 of the Restatement of Torts.
We decline to extend section 552 to the facts of this case. The existence of a duty of care in a negligence action is a question of law. McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla. 1992). As the Second District stated in Sandarac Ass'n v. W.R. Frizzell Architects, Inc., 609 So.2d 1349, 1353 (Fla.2d DCA 1992), review denied, 626 So.2d 207 (Fla. 1993), in declining to expand negligence law under the facts of that case:
When the judiciary creates a new duty in negligence to protect economic interests, however, it should be aware that it is not merely creating an exception to an existing common law rule of damages. It should be convinced that the problem justifies a judicial allocation of the relevant risks among the members of society, and that an adequate remedy cannot realistically exist through private contracts and statutory remedies.
Because we are convinced that there were various ways for the buyer to ensure that it would have an adequate remedy, we decline to extend section 552 to a party who failed to protect itself. Therefore, we hold as a matter of law that Narcam did not owe the buyer of an airplane with whom it had no privity of contract a duty of care under section 552. If we held otherwise, "contract law would drown in a sea of tort." Casa Clara, 620 So.2d at 1247 (quoting East River, 476 U.S. at 866, 106 S.Ct. at 2299-3000).
Accordingly, we affirm the trial court's order granting summary judgment.
Affirmed.
SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, JORGENSON, LEVY and GODERICH, JJ., concur.
COPE, Judge, specially concurring.
I concur in the judgment but am unable to join the majority opinion.
On the facts present here, appellant Palau International Traders, Inc. ("buyer") does not have a viable claim against the appellee F.A.A. repair station, Narcam Aircraft, Inc., under section 552 of the Restatement (Second) of Torts. Consequently, I agree that the summary final judgment in favor of Narcam must be affirmed.

I
Second 552 of the Restatement (Second) of Torts recognizes a cause of action in certain circumstances where information is negligently supplied for the guidance of others. The Restatement describes the cause of action as follows:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable *419 reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.
Restatement (Second) of Torts § 552 (1976) (emphasis added).
In First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 9 (Fla. 1990), the Florida Supreme Court "decided to adopt the rationale of section 552, Restatement (Second) of Torts (1976), as setting forth the circumstances under which accountants may be held liable in negligence to persons who are not in contractual privity." 558 So.2d at 14. Illustrations to section 552 explicitly treat the question of accountant liability. See id. at 15 (quoting illus. 15); Restatement (Second) of Torts § 552, illus. 3, 5-7, 10, 14-15.
The District Courts of Appeal have applied section 552 to other professions and occupations. See Bay Garden Manor Condominium Ass'n, Inc. v. James D. Marks Assoc's, Inc., 576 So.2d 744 (Fla.3d DCA 1991) (engineers); see also McElvy, Jennewein, Stefany, Howard, Inc. v. Arlington Elec., Inc., 582 So.2d 47, 49-50 (Fla.2d DCA) (architects), cause dismissed, 587 So.2d 1327 (Fla. 1991); First State Savings Bank v. Albright & Assoc's of Ocala, Inc., 561 So.2d 1326, 1329 (Fla. 5th DCA) (real estate appraiser), review denied, 576 So.2d 284 (Fla. 1990), disapproved in part on other grounds, Garden v. Frier, 602 So.2d 1273, 1277 n. 10 (Fla. 1992).[1]
Of particular interest for present purposes is illustration 8 to section 552, which provides:
8. A, wishing to sell his car to B, writes to C, an expert mechanic, asking him to inspect the car and forward to A a letter stating its condition, in order that A may give the letter to B, who, as A tells C, is a prospective purchaser. Nothing is said about using the information only for B. C may be found to have supplied the information for the guidance of B only, or for the guidance either of B or of any other purchaser whom A may find.
Restatement (Second) of Torts § 552, illus. 8 (emphasis added). Under section 552 the expert mechanic would incur liability if the mechanic negligently supplied false information for the guidance of the buyer and the buyer justifiably acted in reliance thereon. Id. § 552(1).
Illustration 8 makes clear that the rule announced by section 552 is not confined solely to the learned professions. Indeed, by its explicit terms section 552 applies to one who is engaged in a "business, profession or employment." Id. Thus, the reasoning underlying the rule applies in the context of negligent inspection of mechanical equipment such as that at issue here. Indeed, the expert mechanic discussed in illustration 8 is performing work closely akin to the work performed by Narcam.[2]

*420 II
The next question is whether the buyer has a viable claim in tort against Narcam under section 552 of the Restatement. In my view, the buyer does not.
The buyer entered into a contract with International Airlines Holding Corp. ("seller") which provided in part that "the aircraft shall be under U.S. Registry and shall have a current United States' F.A.A. Certificate of Airworthiness, all applicable airworthiness directives shall have been accomplished, and it shall otherwise be in compliance with ARROW AIR's maintenance program or such other program as may be mutually agreed to by and between the parties hereto."
The certificate of airworthiness and the U.S. registration are both issued by the United States Federal Aviation Administration ("F.A.A."). In order to obtain the airworthiness certificate, it was necessary for required maintenance and repair to be performed by an F.A.A. certificated repair station, in this case, Narcam. Upon completion of its work, Narcam did sign the relevant portion of the F.A.A. "Application for Airworthiness Certificate." Although it is true that the F.A.A. relies very heavily on the certificate executed by the repair station and on the repair station's entries in the aircraft log book, a further inspection was performed by an F.A.A. representative.
The facts of this case fall short of the showing necessary to make out a cause of action under section 552. This is not a case in which Narcam was hired to perform an inspection and render assurances to the buyer regarding the airworthiness of the aircraft. Rather, Narcam was hired to perform repair work and to issue the necessary certification on which the F.A.A. would rely in issuing an airworthiness certificate. Regardless of what Narcam did or did not do, the buyer did not have to accept this aircraft unless the F.A.A. actually issued an airworthiness certificate. Narcam's work was merely one step along that pathway.
Illustration 8, by contrast, involves a situation in which an expert mechanic rendered a negligently prepared inspection report to a prospective buyer, knowing that the prospective buyer would use the information to decide whether or not to buy the automobile. In illustration 8, the buyer did, in fact, reasonably rely on the inspection report. Here, there was no Narcam report rendered to the buyer, nor did buyer make a decision to accept this aircraft on the basis of a Narcam report. This transaction depended on the issuance of an airworthiness certificate by the F.A.A. itself, not on the issuance of a report by Narcam.
Since the buyer has no tort remedy under section 552, the buyer is confined to its contract remedies against the seller. I concur that the judgment must be affirmed.
NOTES
[1] Real estate appraisal was characterized as a vocation rather than a profession. Garden v. Frier, 602 So.2d at 1277 n. 10; see First State Savings Bank v. Albright & Assoc's of Ocala, Inc., 561 So.2d at 1330.
[2] It is not true, as the majority opinion suggests, that Narcam must be "in the business of supplying information for the guidance of others as contemplated by section 552 of the Restatement." Opinion at 15. The relevant portion of section 552 imposes liability on "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions[.]" Restatement (Second) of Torts § 552 (Emphasis added). As explained by comment c, the "pecuniary interest" requirement simply means that the supplier of the information is acting for pecuniary gain and not gratuitously. "If he has no pecuniary interest and the information is given purely gratuitously, he is under no duty to exercise reasonable care and competence in giving it." Id. § 552 cmt. c.