**LAURENS ELECTRIC COOPERATIVE, INC., Plaintiff–Appellant,**

v.

**ALTEC INDUSTRIES, INC., Defendant–Appellee.**

No. 88–1733.

United States Court of Appeals, Fourth Circuit.

Argued April 12, 1989.

Decided Nov. 22, 1989.

Ronald W. McKinney (Duggan, Reese & McKinney, P.A., on brief), Greer, S.C., for plaintiff-appellant.

Thomas W. Traxler (Jefferson V. Smith, Jr., Carter, Smith, Merriam, Rogers & Traxler, Greer, S.C., on brief), for defendant-appellee.

Before SPROUSE and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

In this action the plaintiff sought to recover the value of a utility truck that had been destroyed by fire and consequential damages for the loss of its use. The truck had been rebuilt by the defendant under a contract negotiated by the parties, and the complaint alleged counts in negligence and strict liability in tort as bases for the recovery it sought.

There was a limited warranty obligating the defendant to repair or replace any part found to be defective, but otherwise disclaiming all other warranties and all liability for consequential damages.

At the conclusion of the testimony, the judge granted the defendant's motion for a directed verdict and the plaintiff has appealed from the resulting judgment in the defendant's favor.

We affirm.

I.

The plaintiff, Laurens Electric, is a cooperative providing electrical service to its customers in several counties in South Carolina. For the setting up of utility poles, it uses specially designed trucks, each of which is equipped with a hydraulic derrick and associated augers for the drilling of postholes.

The defendant, Altec, is in the business of repairing and rebuilding such utility trucks. The two parties had an established relationship, for Altec had rebuilt several utility trucks for Laurens Electric.

In late 1984, one such utility truck, owned by Laurens Electric, was in need of repairing and rebuilding. As the result of negotiations, the parties entered into a contract pursuant to which Altec was to do extensive, but specified, work on the derrick and remount it upon a new Chevrolet truck chassis.

The new or rebuilt truck was delivered to Laurens Electric, and in the spring of 1985, while being used in the boring of a utility posthole, the vehicle caught fire and was substantially destroyed. The plaintiff theorized that a clamp securing a flexible hose in the vehicle's hydraulic system had been improperly crimped and that the hose became loose, spraying inflammable hydraulic fluid upon the truck's exhaust system. There was ignition and the truck was destroyed.

## II.

On earlier occasions there had been a limited warranty obligating Altec to replace defective parts, but imposing no other obligation upon it. On this occasion, the parties dealt with each other on a rather informal basis. No new copy of the warranty was furnished by Altec, but there were references to the practice established between the parties, and an official of Laurens Electric testified that, while he had not memorized the exact terms of the warranty, he knew and understood that the applicable warranty was the limited one provided by Altec on the earlier occasions.

## III.

South Carolina, whose law governs our decision in this case in our diversity jurisdiction, has embraced the doctrine of strict liability in tort in products liability cases. It did so by legislative enactment of § 402A of the Restatement of Torts Second, South Carolina Code (1976) § 15–73–10. It provides that, regardless of fault, when one sells a product in a defective condition unreasonably dangerous to the user or consumer or to his property, he is subject to liability for physical harm suffered by the ultimate user or consumer or by his personal property, provided the seller is engaged in the business of selling such products. The statute does not attempt to define dangerousness or to limit application of the statute to non-commercial transactions. Nevertheless, the reason for the flowering of the doctrine strongly suggests the need for avoidance of such expansive interpretations of the statute that it loses touch with its reason.

The doctrine, of course, was born out of concern for the individual consumer in this modern world who purchases or uses appliances and other products capable of inflicting grievous bodily injury when the product is defective or misused. When the user of a defective riding lawn mower suffers a mangled leg, he is unlikely to be prepared to shoulder the economic losses flowing from his misfortune. It was thought much better that the burden of such economic losses be placed upon the business enterprises that manufactured and sold the lawn mower, and who could treat such losses as part of the cost of doing their business. Moreover, placing such liabilities upon manufacturers and sellers, regardless of fault, would create additional incentives for the exercise of extraordinary care to assure that their products would not cause injuries to consumers.

The reason for the rule, however, has no universal application in a commercial world. Thus, the reason for the rule does not suggest the answer when the problem is one of allocation of economic loss between commercial entities, neither of which is in any special need of protection from the other. There is room in the statutory expression of the rule for carefully fashioned judicial exceptions and limitations.

Such a problem came before us in a case in which the conflicting interests were commercial rather than personal.

In *Purvis v. Consolidated Energy Products Co.*, 674 F.2d 217 (4th Cir.1982), we were concerned with the malfunction of six tobacco curing barns. The plaintiff hoped to reduce his labor costs by purchasing the new barns, with a different loading and stacking method. In operation, however, the barns proved ineffective in properly curing the tobacco. The plaintiff sought recovery for his economic losses from the manufacturer of the barns. We held that no such cause of action was available to him.

In *Purvis*, we might have found that the quality of dangerousness was not present, but concluded that the commercial setting

made inapplicable South Carolina's strict products liability statute. The plaintiff's tobacco had been damaged, and he was saddled with six barns that could not be made to function in the manner he had expected. No one had been hurt, however. The plaintiff was a commercial farmer who had made a capital investment with the hope of effecting a reduction of his costs of operation. The question was one created by the failure of the barns to function in the manner in which the parties intended.

In this case, the district judge granted a directed verdict for the defendant after careful consideration of our opinion in *Purvis*. The analogy, of course, is not perfect, for in *Purvis* the only fault with the barns was the fact that they could not be made to function as intended, while in this case the truck was destroyed.

It seems to be generally recognized, however, that the doctrine of strict products liability should not be invoked in cases in which there had been gradual deterioration of the product or it had failed to perform with the effectiveness or efficiency that had been expected of it. Such economic losses are substantially identical to those suffered when the only injury inflicted is to the product itself. It seems of no moment that that kind of injury is suffered in a sudden calamity or more slowly and less dramatically.

Efforts to define the contours of the doctrine when the problem was one of allocation of economic loss between commercial entities when a defective product destroyed itself met with varied answers. *See* 72 ALR 4th 12. The problem then came before the Supreme Court of the United States where a unanimous opinion was produced. The Supreme Court held that in such situations tort principles were simply inapplicable, and the result should be determined by resort to contract law.

Because of the unanimity of the judges, that decision should exert a substantial harmonizing influence.

*East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), was a case within the Court's admiralty jurisdiction. At the outset, however, the Court adopted, as part of admiralty law, the doctrine of strict liability in tort for damage caused by defective products. It thus proceeded to consider some of the problems that some state courts had found thorny and divisive.

The plaintiffs were the charterers of four large 225,000–ton supertankers. Transamerica Delaval had supplied the propulsion systems. In the first three of the ships the firststage steam reversing ring on the high pressure turbine proved defective, destroying itself and doing other damage to the turbine. In the fourth ship a newly designed ring was used, and it was not defective. However, the astern guardian valve between the high pressure and low pressure turbines was installed backwards. That caused damage to the low pressure turbine.

In each case, the part that was defective or improperly installed was only a small component of the ship's propulsion system, but the Supreme Court held that the product was the whole propulsion system. Almost every product has components, and these problems may be resolved only by looking to the whole. The Supreme Court was of the view that it was irrelevant whether the destruction occurred in a calamitous event and the extent of the product's dangerousness so long as the claim was one simply of economic loss caused by the product's self-destruction. In each of the four cases, the Supreme Court concluded, the claim was for only economic losses that had been sustained in a commercial setting. Tort principles were simply inapplicable to such claims; conventional contract law would define the rights of the parties and provide the appropriate remedies.

The Supreme Court of the United States does not sit to declare the common law of South Carolina. The Supreme Court of South Carolina may speak the final word in that area of the law, but that court has not addressed this problem. When it does, it surely will look with respect upon the unanimous decision of the Supreme Court. Since the decision supplies a rational an-

swer to a set of problems that has been vexing, we may predict with confidence that the Supreme Court of South Carolina will find the decision of the Supreme Court persuasive.

In this case the dissidents are contending only over economic loss flowing from the destruction of the truck. No person was hurt; there is no claim for personal injury. Each of the parties is a commercial entity with apparent equality in ability to provide self-protection. Laurens Electric could have insisted that the contract provide it with clearly defined contract rights and remedies, or could have insured itself against risk of loss of the truck by fire. Indeed, it is commonplace with owners of vehicles to insure themselves against risk of loss of the vehicle by fire, and it is most unlikely that the amount of the premium would be affected by an exception when the cause of the fire is a defect in the truck or its equipment. It is immaterial that Laurens Electric may not have had such insurance, for it was a strong commercial enterprise and its claim is one only for economic loss.

### IV.

We conclude that the district judge properly directed a verdict for the defendant on Laurens Electric's tort claims.

### V.

In the complaint and in the district court all of the claims sounded in tort. There was some discussion about the exact terms of the defendant's warranty, although everything suggests that the defendant's only warranty was the limited one it had used on earlier occasions. The plaintiff said it stood upon its position that the principle of strict liability in tort provided it with a tort claim upon which it was entitled to go to the jury.

Now, for the first time, the plaintiff looks for support to the Uniform Commercial Code as embodied in South Carolina Code § 36–2–719. That section generally supports the freedom of the parties to control the terms of their own contractual relations, but subsection (2) provides

"Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act."

Now, for the first time, the plaintiff contends that the limited warranty has failed of its essential purpose since giving it a new hose and clamp will not enable it to restore the truck to the condition in which it was before the fire.

On the other hand, the defendant contends that the Uniform Commercial Code does not apply, since the transaction was not one of sale but primarily one of repair and reconstruction under a contract in which the defendant's undertaking was spelled out in substantial detail.

We think this court should not undertake to explore that problem in the first instance. Nor do we think the belated emergence of this contention warrants a remand of the case to the district court for a new trial in which inquiry may be had into such things as the extent of plaintiff's participation in the formulation of the contract specifications. The plaintiff has had its day in court. It vigorously urged its tort claims; even now its principal reliance is upon rights it claims it possesses under tort law. It has no contract claim unless it can bring itself under the provisions of § 36–2–719(2) and have the court substitute an unlimited warranty for the limited one the defendant had given. That is a new venture upon which we are not prepared to get involved.

### VI.

For these reasons, the judgment of the district court is affirmed.

AFFIRMED.