578 So.2d 451 (1991)
AMERICAN UNIVERSAL INSURANCE GROUP, Appellant,
v.
GENERAL MOTORS CORPORATION, Appellee.
No. 89-2475.
District Court of Appeal of Florida, First District.
April 22, 1991.
Robert M. Dees of Gabel, Taylor & Dees, Jacksonville, for appellant.
Ronald L. Palmer of Sistrunk, Kaler & Palmer, P.A., Jacksonville, for appellee.
SMITH, Judge.
American Universal Insurance Group (American) appeals a final order dismissing its second amended intervening complaint against General Motors Corporation (General Motors). American sought tort damages under theories of negligence and strict liability for injury to an engine which burned up as the result of an allegedly defective oil pump manufactured and sold by General Motors. We affirm.
In 1985, Diesel Parts, Sales & Service, Inc. (Diesel Parts) sold to Robert Cook and installed in the commercial fishing vessel, "Captain Sleepy," a replacement oil pump which was manufactured, assembled, sold and distributed by General Motors. On January 20, 1987, while Captain Sleepy was being operated off the coast of New Symrna Beach, Florida, the oil pump drive gear *452 allegedly malfunctioned, burning up the engine. Pursuant to its insurance policy, American paid Cook and his wife $7,392.91 for damages to the engine. As the result of American's payment to Robert Cook, American became subrogated to Cook's rights against General Motors to the extent of its payment.
The action below arose when Diesel Parts sued Cook, seeking to recover for the parts and labor for repairing the damaged engine. Cook answered and alleged, among other things, a set-off based upon Diesel Parts' breach of implied warranty of merchantability arising out of the sale of the defective oil pump. Cook brought a third-party complaint against Diesel Parts and General Motors based upon the same grounds. The third-party claim against General Motors was dismissed for failure to state a cause of action and was not refiled.
In the meantime, American moved for and was granted the right to intervene as a subrogee of Cook's rights to the extent of the insurance company's payment to him. American filed an intervening complaint against Diesel Parts and General Motors. Count I sued both defendants for negligence, Count II sued Diesel Parts for breach of implied warranty, and Count III sued General Motors for strict liability. General Motors' motion to dismiss Counts I and III was granted with prejudice. Diesel Parts also moved to dismiss Count I and this motion was granted. Count II, the breach of warranty action against Diesel Parts, remains pending.
While the trial court's order dismissing the complaint against General Motors does not set forth the basis for the dismissal, it is plain that the complaint was dismissed upon the trial court's belief that Florida law does not allow recovery in tort for the damages claimed by American.[1]
The controversy regarding whether and under what circumstances a manufacturer, wholesaler, seller, or retailer may be held liable under tort theories, either negligence or strict liability, for defects in a product, where the only damage alleged is to the product itself and not to persons or other property, is long-standing. See Annot., Strict Products Liability: Recovery for Damage to Products Alone, 72 A.L.R.4 12 (1989). One line of cases precludes recovery of such damages in a tort action, reasoning that the law of contracts (warranty action) is more suitable when the loss involves only monetary harm. See Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (1965). On the other hand, a minority of courts permit recovery in a tort action. See Santor v. A & M Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965); but see Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660 (1985) (rejecting Santor in the commercial context). Some courts allow recovery only if the defective product created an unreasonable risk of harm to persons or property other than the defective product, or the damage took place in a sudden or calamitous fashion. See Northern Power & Engineering Corp. v. Caterpillar Tractor Co., 623 P.2d 324 (Alaska 1981), and Cloud v. Kit Manufacturing Co., 563 P.2d 248 (Alaska 1977).
In 1986, in a unanimous decision, the United States Supreme Court ruled that in an admiralty action, one may not recover for injury to the product itself under strict liability or negligence, and the court rejected distinctions based on the manner of injury to the product and degree of risk. See East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). The court identified, examined, and evaluated the fundamental principles of tort and contract remedies and based its decision on the following considerations: (1) when the defective product injures only itself, the reasons for imposing a tort duty are weak and those limiting remedies to contract law are *453 strong; (2) damage to the product itself is most naturally understood as a warranty claim; (3) contract law is well-suited for commercial controversies because the parties may set the terms of their own agreements; (4) warranty law sufficiently protects purchasers by allowing them to obtain the benefit of their bargain; and (5) warranty law has a built-in limitation on liability, whereas tort actions could subject manufacturers to an indefinite amount of damages. Aloe Coal Co. v. Clark Equipment Co., 816 F.2d 110, 117-8 (3rd Cir.1987), citing East River, 106 S.Ct. at 2303.
While East River is only binding in federal admiralty cases, it has been widely accepted in state jurisdictions, including Florida. See Florida Power & Light Co. v. Westinghouse Electric Corp., 510 So.2d 899 (Fla. 1987). In Florida Power & Light, the court ruled that Florida law does not permit a buyer under a contract for goods to recover economic losses in tort without a claim for personal injury or property damage to property other than the allegedly defective goods. Said the court:
We hold contract principles more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage. The lack of a tort remedy does not mean that the purchaser is unable to protect himself from loss. We note the Uniform Commercial Code contains statutory remedies for dealing with economic losses under warranty law, which, to a large extent, would have limited application if we adopted the minority view. Further, the purchaser, particularly in a large commercial transaction like the instant case, can protect his interests by negotiation and contractual bargaining or insurance. The purchaser has the choice to forego warranty protection in order to obtain a lower price. We conclude that we should refrain from injecting the judiciary into this type of economic decision-making.
Id. at 902.
American concedes that the rule in Florida is that economic losses are not recoverable in tort in the absence of personal injury or damage to property other than the product itself. However, American points out that this rule does permit recovery for damages when there is injury to "other property" other than the product itself. It is American's contention that under the circumstances of this case, the oil pump was the product and the engine was "other property" so that American can seek recovery for the damage to the engine. American makes this argument based upon its contention that the object of the parties' bargain in this case was a replacement oil pump, so that when the replacement oil pump damaged the engine, this was damage to "other property." American concedes that if it had been the original oil pump which failed, the rule precluding recovery for economic loss in tort would apply. We disagree that a distinction can be made based upon the fact that it was the replacement oil pump which malfunctioned rather than the oil pump originally placed in the engine by General Motors.
There is no dispute that the engine in this case was manufactured by General Motors. It is our view that the oil pump was an integral or component part of the engine manufactured by General Motors and thus the damage to the engine caused by this component part was not damage to separate property. East River, 106 S.Ct. at 2300 (each super tanker's defectively designed turbine components damaged only the turbine itself  each turbine was supplied by Delaval as an integrated package); Laurens Electric Cooperative, Inc. v. Altec Industries, 889 F.2d 1323 (4th Cir.1989) (rebuilt utility truck caught fire allegedly because hose improperly crimped and later sprayed hydraulic fluid upon truck's exhaust system  no recovery for economic losses sustained in commercial setting); Nicor Supply Ships Assoc. v. General Motors, 876 F.2d 501 (5th Cir.1989) (defective engine caused fire damaging vessel  no recovery for damages to ship but could recover for seismic equipment placed on ship over a year after it had been purchased because these items were not part of the contract under which the vessel was sold); King v. Hilton-Davis, 855 F.2d 1047 (3d *454 Cir.1988) (sprout suppressant used on seed potatoes allegedly defective causing potato crop to fail  relevant product of farmers was the potatoes, rather than the suppressant, and thus farmers could not recover from manufacturer of suppressant for losses sustained by them when their potato crop failed); Shipco 2295, Inc. v. Avondale Shipyards, Inc., 825 F.2d 925 (5th Cir.1987) (court held that in the context of a tort claim for economic loss, the "product" means "the finished product bargained for by the buyer" rather than the individual components of the product such that buyer of allegedly defective vessels could not maintain tort claim for economic loss either against the builder/seller of the vessels or the designer of the steering mechanism on one vessel); American Home Assurance Co. v. Major Tool & Machine, Inc., 767 F.2d 446 (8th Cir.1985) (court rejected a claim that strict product liability was applicable because there was damage to other property when, as a result of a dimensional deviation by suppliers from contract drawings, a wear pin became disengaged, entered the air stream, and came in contact with other components of the turbine, causing extensive damage  court said that what was meant by damage to "other property" was such damage as would occur if defective brakes on truck caused it to run into and damage a home); McConnell v. Caterpillar Tractor Co., 646 F. Supp. 1520 (D.N.J. 1986) (commercial fisherman purchased allegedly defective crankshaft from Caterpillar in process of overhauling the Caterpillar engine of their marine trawler which crankshaft allegedly damaged engine  Caterpillar had no duty under a negligence or strict products liability theory to prevent product from injuring itself).
In identifying the "product" for purposes of the rule applied in this case, these courts applied different reasoning, some concentrating on the object of the contract or the bargain as determinative of the rights of the parties, others focusing on the product purchased by the plaintiff. In the latter instance, the court in King v. Hilton-Davis stated:
As we read East River, it is the character of plaintiff's loss that determines the nature of the available remedies. When loss of the benefit of the bargain is the plaintiff's sole loss, the judgment of the Supreme Court was that the undesirable consequences of affording a tort remedy in addition to a contract-based recovery were sufficient to outweigh the limited interest of the plaintiff in having relief beyond that provided by warranty claims. The relevant bargain in this context is that struck by the plaintiff. It is that bargain that determines his or her economic loss and whether he or she has been injured beyond that loss.
855 F.2d at 1051.
In this case, American's insured merely suffered economic losses  cost of repairing the engine and lost profits  which are better suited to a contract action. Here the object of the bargain was a repaired engine, not just a replacement oil pump. The oil pump furnished essential lubrication and heat protection to the engine  this is the part of the "bargain" purchased, not just the metal and parts making up the oil pump. The pump became an integral part of the repaired engine and when it damaged itself, and the engine parts, this was not damage to "other property." As in King v. Hilton-Davis, the "character of the loss" is not just a useless pump  it is an engine deprived of a substance that is essential to its operation.
However, the insurance company argues that the invocation of the rule precluding tort claims for only economic losses applies only where there are alternative theories of recovery better suited to compensate the damaged party for a particular kind of loss. Latite Roofing Co., Inc. v. Urbanek, 528 So.2d 1381 (Fla. 4th DCA 1988). American contends there is no alternative theory of recovery against General Motors in this case because there is no privity between its subrogee (Cook) and General Motors and thus an action based upon implied warranty is precluded and there is no basis for recovery absent this tort claim.
This argument overlooks that a contract action remains pending against the seller *455 of the allegedly defective product (Diesel Parts). Moreover, the end result of the East River and the Florida Power & Light decisions is that relegating parties to contract remedies in cases such as this allows parties to freely contract and allocate the risks of a defective product as they wish. A buyer may bargain for a warranty or opt to forego the warranty in order to pay a lower purchase price; or, the buyer may obtain insurance against economic loss, which Cook did in this case. In this latter instance, numerous courts have ruled that insurance provides adequate protection to the party who suffers a loss from injury of the product to itself. See Utah International, Inc. v. Caterpillar Tractor Co., 775 P.2d 741, 744 (Ct.App.N.M. 1989). See also Laurens Electric, 889 F.2d at 1326; Florida Power & Light, 510 So.2d at 902.
The Cooks received the benefits of their insurance policy. We conclude that under the circumstances, no policy reasons justify extending strict products liability to this situation. Sharp Brothers Contracting Co. v. American Hoist & Derrick Co., 703 S.W.2d 901, 72 A.L.R.4th 1 (Mo. 1986), concurring opinion of Judge Welliver.
AFFIRMED.
BOOTH, J., concurs.
ZEHMER, J., dissents.
NOTES
[1] Because the parties have raised no issue as to the applicability of maritime law in this case, and because we find that the controlling rules and principles as discussed in this opinion are the same under maritime or Florida law, we find it unnecessary to render an opinion as to which law applies to this case. As to the applicability of maritime law in similar cases, see Sisson v. Ruby, ___ U.S. ___, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990).