742 So.2d 523 (1999)
FLORIDA SPECIALTY, INC., a Florida corporation, and Nimnicht Cadillac Company, Inc., a Florida corporation, Appellants,
v.
H 2 OLOGY, INC., a Florida corporation, and Stephen P. Brandvold, Appellees.
No. 98-309.
District Court of Appeal of Florida, First District.
October 20, 1999.
*525 Carl D. Dawson of Dawson, Galant & Sulik, Jacksonville, for Appellants.
T. Geoffrey Heekin, Ann Krueger Smith, and S. Hunter Malin, Jacksonville, for Appellees.
KAHN, J.
Appellants, Florida Specialty, Inc. and Nimnicht Cadillac Company, Inc., were plaintiffs below in this negligence action brought against appellees, H 2 Ology, Inc. and Stephen P. Brandvold. Appellants challenge an order dismissing their Third Amended Complaint with prejudice. Because the complaint states a cause of action against both appellees, and Nimnicht's claim is not barred by the economic loss rule, we reverse. We recite the facts as set out in the complaint.
At various times, Florida Specialty leased three Cadillac cars from Nimnicht. Florida Specialty is a Jacksonville company located at 8295-4 Western Way Circle. Florida Specialty employees operated the leased vehicles on Western Way Circle. H 2 Ology operates a business at 8286-01 Western Way Circle. Brandvold is the "sole stockholder, sole officer and sole employee" of H 2 Ology.
H 2 Ology and Brandvold manufactured a product called Brine Plus, an extremely corrosive saltwater solution. In the words of the complaint, Brine Plus "poses a foreseeable threat of corrosion to motor vehicles which might come in contact with it." Appellees utilized Western Way Circle to transmit overflow and spillage of Brine Plus from H 2 Ology's place of business. Also, according to the complaint, appellees knew, or should have known, that Brine Plus would harm motor vehicles lawfully using Western Way and knew, or should have known, that employees of Florida Specialty would be driving their automobiles on Western Way Circle in order to get to and from work. Nevertheless, H 2 Ology and Brandvold negligently caused Brine Plus solution "to flow onto the public street of Western Way Circle and negligently failed to warn officers and employees of Florida Specialty, Inc. of the damage that would be caused to their respective vehicles if they drove through or into the Brine Plus solution." Florida Specialty employees drove the leased vehicles through the Brine Plus solution resulting in extensive damage and depreciation to the motor vehicles.
H 2 Ology and Brandvold jointly moved to dismiss the Third Amended Complaint with prejudice. After a hearing, the trial court granted the motion to dismiss with prejudice as to Nimnicht and without prejudice as to Florida Specialty. When Florida Specialty declined to replead, the court entered an order of dismissal with prejudice disposing of the entire complaint. Although the motion raised numerous grounds for dismissal, neither order elaborates upon the trial court's rationale for dismissing the complaint. This appeal ensues.
On a motion to dismiss, the trial court is bound to accept all well-pleaded facts as true. See, e.g., Brewer v. Clerk of the Circuit Court of Gadsden County, 720 So.2d 602 (Fla. 1st DCA 1998); Martin Elec., Inc. v. Glombowski, 705 So.2d 26, 28 (Fla. 1st DCA 1997). Here, the complaint alleges that appellants and appellees are neighbors on the same roadway in Jacksonville. The complaint also alleges that appellees had actual or constructive knowledge that their discharge of Brine Plus onto Western Way Circle would harm motor vehicles and that appellees knew that Florida Specialty employees drove their cars on Western Way Circle to get to and from work. The complaint thus alleges the existence of a duty by setting forth allegations that appellees' actions created "a foreseeable zone of risk." Pate v. *526 Threlkel, 661 So.2d 278, 280 (Fla.1995). A legal duty will arise "whenever a human endeavor creates a generalized and foreseeable risk of harming others." McCain v. Florida Power Corp., 593 So.2d 500, 503 (Fla.1992).
A landowner abutting a public highway may have a duty toward passing motorists for creation of a dangerous artificial condition on the highway. See Whittaker v. Honegger, 284 Ill.App.3d 739, 221 Ill.Dec. 169, 674 N.E.2d 1274, 1276 (1996) (holding that landowners owed passing motorcyclists a duty to exercise ordinary care to prevent or remedy allegedly dangerous condition presented by gravel that had migrated onto paved highway from landowner's driveway); Harris v. F.W. Woolworth, 824 S.W.2d 31, 33 (Mo.Ct.App.1991) ("A person who creates a dangerous condition on a public roadway is liable for the foreseeable injuries caused thereby."). In this case, as noted above, appellants have made specific allegations concerning appellees' knowledge that their dangerous products had migrated onto the highway and, once on the highway, posed a hazard to passing motor vehicles. The complaint sufficiently alleges duty.
We also conclude that the complaint sufficiently alleges damages. Nimnicht is the lessor, and Florida Specialty the lessee, of the three Cadillac vehicles allegedly damaged by the corrosive solution. Although appellees argue that appellants have failed to allege payment of money as a result of the damage, they cite no cases indicating that such payment is a prerequisite to an adequate allegation of damages in a negligence case. The proper measure of property damages is generally said to be the diminution in value as a result of the negligence or the reasonable cost of repair. See Davey Compressor Co. v. City of Delray Beach, 639 So.2d 595 (Fla.1994).
Appellees apparently convinced the trial court that Nimnicht, as lessor of the automobiles, has no remedy. The trial court erred to the extent that it accepted this argument. Either a bailor or a bailee of personal property may maintain an action against a third party to recover damages for injury to, or destruction of, the bailed object, and the amount paid or recovered is deemed held in trust to be applied according to the respective rights of the parties. See Lake City Auto Fin. Co. v. Waldron, 83 So.2d 877 (Fla.1955). A lessor is a bailor for hire. See, e.g., W.E. Johnson Equip. Co. v. United Airlines, Inc., 238 So.2d 98 (Fla.1970).
The trial court also erred by adopting appellees' argument concerning the economic loss rule. Appellees argue that because Florida Specialties is responsible, under the Nimnicht lease, for damage to the cars, the economic loss rule bars a tort action for any such damage. The economic loss rule is a derivative of contract law. See Comptech Int'l, Inc. v. Milam Commerce Park Ltd., 711 So.2d 1255, 1257 (Fla. 3d DCA 1998)(noting that the economic loss rule does not permit a cause of action for economic damages "where the claims are clearly contractual in nature and the cause of action is inseparably connected to the breaching party's performance under the contract"). No cases cited by appellees suggest that the rule applies to bar a tort claim whenever the claimant has any contractual remedy against any other party.
Contrary to appellees' assertions, neither Florida Building Inspection Services, Inc. v. Arnold Corp., 660 So.2d 730 (Fla. 3d DCA 1995), nor American Universal Insurance Group v. General Motors Corp., 578 So.2d 451 (Fla. 1st DCA 1991), has any application to this case. Appellees rely upon these cases because in each opinion the court notes a lack of privity between the plaintiff and the defendant. The cases are, nevertheless, worlds apart from the present situation.
In American Universal, an oil pump manufactured by General Motors malfunctioned, burning up an engine on a fishing *527 boat that belonged to American Universal's subrogee. 578 So.2d at 451-52. This court noted that the oil pump was an "integral or component part of the engine manufactured by General Motors and thus the damage to the engine caused by this component part was not damage to separate property." Id. at 453. American Universal had no tort action against General Motors for the loss. See id. at 453-54. In Florida Building, the sublessee of a warehouse was prohibited from bringing a tort action against a building inspection company hired by the lessee, even though the sublessee was not in privity with the building inspection company. 660 So.2d at 731-33. In both of these cases, the defendant had expectations, based upon a contractual relationship with another party, related to a service or good provided under contract. The plaintiffs in these cases suffered "disappointed economic expectations," which are protected by contract law rather than tort law. See Palau Int'l Traders, Inc. v. Narcam Aircraft, Inc., 653 So.2d 412, 416 (Fla. 3d DCA 1995).
According to the Florida Supreme Court, "contract principles [are] more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage." Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899, 902 (Fla. 1987). In other words, "one may not recover for injury to the product itself under strict liability or negligence...." American Universal, 578 So.2d at 452. Under the facts alleged in the present complaint, the tort, negligent discharge of a corrosive substance, is completely independent of the contract for lease of three motor vehicles from Nimnicht to Florida Specialty. Moreover, appellees and appellants here did not have a commercial or contractual relationship that would give rise to the type of economic expectations worthy of protection under the economic loss rule. See Florida Power, 510 So.2d at 901. We find no rationale for application of the economic loss rule in this case.
Appellants' last point on appeal raises the question of Brandvold's individual liability. We find that Brandvold is not entitled to dismissal at this stage of the litigation. The complaint alleges that Brandvold actually committed the tortious act at issue here by negligently causing Brine Plus solution to flow onto the public street of Western Way Circle. The existence of a corporation does not shield an individual tortfeasor from potential personal liability. Individual officers and agents of a corporation are personally liable where a tort has been committed. See McElveen v. Peeler, 544 So.2d 270 (Fla. 1st DCA 1989); Adams v. Brickell Town-house, Inc., 388 So.2d 1279 (Fla. 3d DCA 1980).
Although appellees argue that no allegation justifies piercing the corporate veil, this contention misses the mark. By this argument, appellees again rely upon a principle generally applicable in contract law. As this court has observed, the concept of piercing the corporate veil does not apply in the case of a tort, even where an intentional tort has not been alleged:
Individual officers and agents of a corporation are personally liable where they have committed a tort even if such acts are performed within the scope of their employment or as corporate officers or agents. Littman v. Commercial Bank & Trust Co., 425 So.2d 636, 640 (Fla. 3d DCA 1983). There is no need to allege fraud, Fenick v. Robertson, 406 So.2d 1263, 1264 (Fla. 4th DCA 1981), or physical injury.... A corporate officer may not be held individually liable on a contract unless he signed in an individual capacity, or unless the corporate veil was pierced or the corporate entity should be ignored because it was found to be formed or used for fraudulent purposes, or where the corporation was merely the alter ego of the shareholder. Ryan v. Wren, 413 So.2d 1223, 1224 (Fla. 2d DCA 1982.) Nevertheless, officers or agents of a corporation may be held liable for their own torts even if *528 such acts are performed within the scope of their employment or as corporate officers or agents. This is so even if no argument is advanced that the corporate form should be disregarded. Adams v. Brickell Townhouse, 388 So.2d 1279, 1280 (Fla. 3d DCA 1980).
White-Wilson Med. Ctr. v. Dayta Consultants, Inc., 486 So.2d 659, 661 (Fla. 1st DCA 1986) (emphasis added).
REVERSED and REMANDED for further proceedings.
ERVIN and MINER, JJ., CONCUR.